UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DENNIS SABLAN MENDIOLA,<br><br>               Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>               Defendant. | CASE NO. 2:17-cv-01904-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

     Plaintiff Dennis Sablan Mendiola filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

     After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting medical opinion evidence. Had the ALJ properly considered

this medical opinion evidence, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## FACTUAL AND PROCEDURAL HISTORY

On September 22, 2014, Plaintiff filed applications for SSI and DIB, alleging disability as of December 1, 2013. *See* Dkt. 7, Administrative Record ("AR") 20. The applications were denied upon initial administrative review and on reconsideration. *See* AR 20. ALJ Eric S. Basse held a hearing on August 2, 2016. AR 41-74. In a decision dated September 6, 2016, the ALJ determined Plaintiff to be not disabled. AR 17-40. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481.

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting medical opinion evidence from: (1) Dr. Geordie Knapp, Psy.D.; and (2) Dr. George Ankuta, Ph.D. Dkt. 9, pp. 1-6. Plaintiff argues that as a result of these errors, a remand for further administrative proceedings is warranted. *Id.* at 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

DISCUSSION

**I.      Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues the ALJ failed to properly consider medical opinion evidence from Drs. Knapp and Ankuta. Dkt. 9.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

  A.   Dr. Knapp

Dr. Knapp conducted a psychological/psychiatric evaluation of Plaintiff in March 2015. AR 543-47. As part of his evaluation, Dr. Knapp conducted a clinical interview and mental status examination. *See* AR 545-47. On the mental status examination, Dr. Knapp found Plaintiff not within normal limits on orientation, memory, fund of knowledge, concentration, or abstract thought. AR 546-47.

Dr. Knapp opined Plaintiff was limited in several areas of basic work activities. He found Plaintiff moderately limited in his ability to adapt to changes in a routine work setting, ask simple questions or request assistance, and understand, remember, and persist in tasks by

following very short and simple instructions. AR 545. In addition, Dr. Knapp determined Plaintiff had marked limitations in his ability to learn new tasks, perform routine tasks without supervision, and understand, remember, and persist in tasks by following detailed instructions. AR 545. Dr. Knapp also opined Plaintiff had marked limitations in his ability to make simple work-related decisions. AR 545. Lastly, Dr. Knapp found Plaintiff severely limited in four areas: his ability to set realistic goals and plan independently; his ability to communicate and perform effectively in a work setting; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 545.

The ALJ discussed parts of Dr. Knapp's opinion and then discounted its weight, stating:

> **(1)** However, this opinion is based on a one-time interview/evaluation of the claimant, **(2)** and relies heavily on claimant's subjective reports of extreme mental symptoms/limitations (e.g., history of sexual abuse, recurrent nightmares/recollections; stays in room all day, does not leave house), **(3)** while also noting that claimant had no history of any psychiatric hospitalizations, counseling or medications. **(4)** Additionally, although the claimant apparently had difficulties on measures of memory and concentration (e.g., serial 7 subtractions) and fund of knowledge, he appeared to do well/intact in his presentation and otherwise as noted by Dr. Knapp (e.g., alert; appropriate hygiene, attire, personal appearance; logical and progressive speech; "pleasant and cooperative"; "gave considered answers"). **(5)** Further, the opinion of marked/severe limitations are not consistent with the overall medical record, including claimant's performance on psychiatric screenings during the course of treatment, as well as his range of activities/demonstrated functioning, discussed above (e.g., assessed as generally intact, alert, oriented, pleasant, understands and responds to questions/commands; manages activities of daily living). Other examinations have shown cognitive functioning at more intact levels over time.

AR 32-33 (numbering and emphasis added) (internal citations omitted).

All five of the ALJ's reasons for discounting Dr. Knapp's opinion were legally insufficient. First, the ALJ discounted Dr. Knapp's opinion because it was "based on a one-time interview/evaluation." AR 32. An examining doctor, by definition, does not have a treating

relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012 to Mar. 26, 2017). Social Security Administration ("SSA") regulations provide the agency "will always consider the medical opinions" it receives in assessing a claimant's disability claim. *See id.* at § 404.1527(b). Accordingly, "[w]hen considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410, at *6 (W.D. Wash. July 31, 2014). As such, discrediting Dr. Knapp's opinion because he saw Plaintiff once was not a specific and legitimate reason for doing so.

Second, the ALJ discounted Dr. Knapp's opinion for relying heavily on Plaintiff's self-reports. AR 32-33. An ALJ may reject a physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation and internal quotation marks omitted). Notably, however, a clinical interview and mental status evaluation are "objective measures" which "cannot be discounted as a self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

In this case, Dr. Knapp's report reveals he conducted both a clinical interview and mental status examination of Plaintiff. *See* AR 543-44, 545, 547. Hence, Dr. Knapp's opinion cannot be discounted for being based on Plaintiff's self-reports. *See Buck*, 869 F.3d at 1049. Moreover, the Ninth Circuit has acknowledged that due to the nature of psychiatry, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.* Thus, this was not a specific, legitimate reason to discount Dr. Knapp's opinion, as it was unsupported by the record and contrary to binding Ninth Circuit authority.

1    Third, the ALJ discounted Dr. Knapp's opinion because Dr. Knapp noted Plaintiff reported "extreme mental symptoms/limitations" while also noting Plaintiff "had no history of any psychiatric hospitalizations, counseling or medications." AR 33. Contradictions between a medical source's opinion and his own clinical notes is a legally sufficient basis for rejecting that opinion. *See Bayliss*, 427 F.3d at 1216; *see also Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of a medical opinion which was internally inconsistent). However, an ALJ may not reject a medical opinion in a vague or conclusory manner. As the Ninth Circuit has stated:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Embrey,* 849 F.2d at 421.

In this case, the ALJ merely stated Plaintiff's lack of psychiatric hospitalizations, counseling, and medications pointed "toward an adverse conclusion" but made "no effort" to explain how these factors contradicted specific findings from Dr. Knapp. *See id.* at 422; *see also* AR 33. "This approach is inadequate." *See Embrey*, 849 F.2d at 422.

Further, to the extent to the ALJ discounted Dr. Knapp's opinion for Plaintiff's failure to seek mental health treatment, this, too, was error. A claimant's failure to seek mental health treatment until "late in the day" is an insufficient basis on which to find a medical source's mental health assessment inaccurate. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate"); *see also Blankenship v. Bowen*, 874 F.2d

1116, 1124 (6th Cir. 1989). Further, as the ALJ acknowledged, Plaintiff received mental health counseling in 2015 and 2016. *See* AR 30-31; *see also, e.g.*, AR 603-05, 616-17, 652-54 (treatment notes). Therefore, in all, the ALJ's third reason for rejecting Dr. Knapp's opinion was error because it was not specific and legitimate nor supported by substantial evidence in the record. *See Nguyen*, 100 F.3d at 1465; *Embrey*, 849 F.2d at 421-22.

Fourth, the ALJ discounted Dr. Knapp's opinion by again implying Dr. Knapp's findings were inconsistent with his clinical observations, noting Plaintiff "appeared to do well/intact in his presentation and otherwise noted by Dr. Knapp (e.g., alert; appropriate hygiene; attire, personal appearance; logical and progressive speech; 'pleasant and cooperative'; 'gave considered answers')." AR 33. An ALJ need not accept a physician's opinion that is "inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Here, however, the ALJ failed to explain the significance of these clinical observations by associating them with specific findings from Dr. Knapp. For example, the ALJ did not explain how the fact that Plaintiff was alert, and had logical and progressive speech, undermined Dr. Knapp's opinion that Plaintiff was severely limited in his ability to perform activities within in a schedule, maintain regular attendance, and be punctual within customary tolerances. *See* AR 33, 545.

Furthermore, the ALJ's reasoning was not supported by substantial evidence. Despite the ALJ's assertion that Plaintiff presented "well/intact" to Dr. Knapp, Dr. Knapp's mental status examination revealed Plaintiff was not "within normal limits" in several areas, including his orientation, memory, fund of knowledge, concentration, and abstract thought. *See* AR 546-47. It is impermissible for an ALJ to "cherry-pick" clinical observations without considering their context. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.22 (9th Cir. 2014) (citation and internal

quotation marks omitted); *see also Reddick*, 157 F.3d at 722-23 (finding ALJ erred in assessing Plaintiff's testimony "by not fully accounting for the context of the materials or all parts of the testimony and reports"). Thus, as a whole, the ALJ's fourth reason for discounting Dr. Knapp's opinion was not specific and legitimate because it was vague and conclusory and not supported by substantial evidence in the record.

Fifth, the ALJ rejected Dr. Knapp's opinion because he found it inconsistent with the overall medical record. AR 33. Once again, the ALJ's finding was conclusory. Although the ALJ described aspects of the medical record – such as Plaintiff's "performance on psychiatric screenings" and "demonstrated functioning" – the ALJ failed to relate any of these descriptions to particular findings by Dr. Knapp. For instance, the ALJ did not explain how Plaintiff's ability to manage "activities of daily living" undermines Dr. Knapp's opinion that Plaintiff is severely limited in his ability perform activities within a schedule or maintain regular attendance over a normal work day and work week on an ongoing basis. *See* AR 33, 545. The ALJ also did not, for example, explain how Plaintiff appearing "alert" and "oriented" in the medical record contradicts Dr. Knapp's finding that Plaintiff is severely limited in his ability to communicate and perform effectively in a work setting. *See* AR 33, 545. Therefore, the ALJ's fifth reason for discounting Dr. Knapp's opinion was not specific and legitimate or supported by substantial evidence. *See Embrey*, 849 F.2d at 422 (an ALJ cannot merely state facts he claims "point toward an adverse conclusion and make[] no effort to relate any of these objective factors to any of the specific medical opinions and findings [he] rejects").

In addition to being vague and conclusory, this reason from the ALJ was error because the ALJ gave greater weight to other examinations over Dr. Knapp's examination without explanation. "An ALJ errs when he rejects a medical opinion or assigns it little weight while . . .

asserting without explanation that another medical opinion is more persuasive." *Garrison*, 759 F.3d at 1012-13. Here, the ALJ briefly asserted "[o]ther examinations have shown cognitive functioning at more intact levels over time." AR 33 (citation omitted). But the ALJ failed to offer any explanation as to why the "other examinations" are entitled greater weight than Dr. Knapp's examination. *See* AR 33. Moreover, in referencing the "other examinations," the ALJ cited Administrative Record Exhibit 19F – a record consisting of treatment records spanning 387 pages. *See* AR 588-974. Hence, given the ALJ's lack of explanation and clear citation, the Court is unable to ascertain why these other examinations are entitled to greater weight than Dr. Knapp's examination. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). Thus, the ALJ's fifth reason for discounting Dr. Knapp's opinion was not specific and legitimate.

The ALJ failed to provide any specific and legitimate reason, supported by substantial evidence, for giving Dr. Knapp's opinion little weight. Accordingly, the ALJ erred. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

In this case, had the ALJ properly considered Dr. Knapp's opinion, the RFC and the hypothetical questions posed to the vocational expert ("VE") may have included additional limitations. For instance, the RFC and hypothetical questions may have reflected Dr. Knapp's opinion that Plaintiff was moderately limited in his ability to conduct very short and simple instructions. The RFC and hypothetical questions may have also contained the limitations that Plaintiff would be severely limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and his ability to complete a normal work day and work week without interruptions from psychologically based symptoms. As the ultimate disability decision may have changed had the ALJ properly considered Dr. Knapp's opinion, the ALJ's error is not harmless and requires reversal. *See Molina*, 674 F.3d at 1115.

B. Dr. Ankuta

Dr. Ankuta conducted a psychological diagnostic evaluation of Plaintiff on January 7, 2015. AR 468-71. As part of the evaluation, Dr. Ankuta reviewed Plaintiff's history and illnesses with him, and reviewed a disability report from the SSA. AR 468-69. Dr. Ankuta also conducted a mental status examination of Plaintiff. AR 470. Dr. Ankuta provided a medical source statement at the end of his evaluation. *See* AR 471. In relevant part, Dr. Ankuta opined Plaintiff "did not demonstrate the ability to think abstractly." AR 471. Further, Dr. Ankuta determined Plaintiff's "memory may not be adequate for recalling simple or complex instructions at work," and his "attention and concentration were fair to poor." AR 471. Dr. Ankuta also noted Plaintiff "may have math and spelling difficulties that make it difficult for him to answer mental status questions that test attention." AR 471.

In addition, while Dr. Ankuta found Plaintiff "could functional socially in a competitive work situation," he wrote Plaintiff "may have difficulty tolerating the emotional stress of competitive work." AR 471. Dr. Ankuta also determined Plaintiff "probably has some learning issues that make it difficult for him to understand his medical care." AR 471. Lastly, Dr. Ankuta wrote that many of Plaintiff's issues could be improved with treatment, but this "will take a year or two," and "it is difficult to predict how much improvement is likely." AR 471.

The ALJ summarized Dr. Ankuta's opinion, and then stated:

> Dr. Ankuta's opinion is give some weight, particularly with regard to claimant's educational limitations and difficulties with math calculations, which are accounted for to some degree in the residual functional capacity assessment set forth in this decision, including limitations to unskilled work involving only simple, routine tasks and no interaction with the public.

AR 32.

The ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). However, the ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent*, 739 F.2d at 1395). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Id.* at 571.

In this case, the ALJ gave Dr. Ankuta's opinion "some weight." AR 32. The ALJ failed, however, to state any reason for why he disregarded Dr. Ankuta's opinion and gave it only "some weight" rather than full weight. *See* AR 32. Defendant contends the ALJ did not err in failing to account for all parts of Dr. Ankuta's opinion because Dr. Ankuta merely opined Plaintiff "may" be limited in certain areas. Dkt. 12, pp. 2-3. Plaintiff, on the other hand, maintains Defendant's arguments are impermissible because "the ALJ did not rely on Dr.

Ankuta's use of the word 'may' to explain why he was not incorporating Dr. Ankuta's opinions" into the RFC. Dkt. 13, p. 2 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Since this matter is being remanded due to the ALJ's harmful error regarding Dr. Knapp's opinion, the Court declines to consider whether the ALJ committed harmful error in his consideration of Dr. Ankuta's opinion. The Court instead directs the ALJ to reconsider Dr. Ankuta's opinion in light of his treatment of Dr. Knapp's opinion on remand. Further, if the ALJ intends to discount any part of Dr. Ankuta's opinion on remand, he is directed to state a reason for doing so.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 1st day of June, 2018.

David W. Christel
United States Magistrate Judge